UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2019-SB6,**<br><br>Plaintiff,<br><br>v.<br><br>**JACOB TAUBER,**<br><br>Defendant. | Civ. No. 21-13386 (KM)(JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Wilmington Trust, National Association, as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB66 ("Lender") initiated this action against Jacob Tauber ("Guarantor") for breach of contract. Because Guarantor has failed to answer the Complaint or otherwise respond in this matter, Lender has moved for default judgment.

For the reasons provided herein, I will grant the motion.

**I.   Summary[1]**

   **a. Factual Allegations**

Lender is a national banking association with its main office in Wilmington, Delaware. (Compl. ¶1.) Guarantor is an individual and citizen of

---

[1]   Citations to the record will be abbreviated as follows. Page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise

1

New York. (Compl. ¶2.) At all relevant times, Guarantor guaranteed a mortgage loan secured by real property located at 901 Bergen Street in Newark, New Jersey, owned by Bergen Lofts LLC (the "Borrower"), which operated as the "901 Bergen" apartments (the "Mortgaged Property"). (Compl. ¶7.)

### The Original Loan Transaction and Subsequent Assignments

On May 20, 2019, Capital One, National Association (the "Original Lender") issued to Borrower a commercial mortgage loan in the aggregate principal amount of $2,068,000.00 (the "Loan"). (Compl. ¶5.) The Loan is evidenced by a Multifamily Note executed by Borrower in favor of the Original Lender in the principal amount of $2,068,000.00 (the "Note"). (Compl. ¶6.) To secure repayment on the Note, Borrower executed a Multifamily Mortgage, Assignment of Rents and Security Agreement in favor of the Original Lender ("the Mortgage"). (Compl. ¶7.)

To induce Original Lender to make the loan, on May 20, 2019, Guarantor executed a Guaranty (the "Guaranty") in favor of the Original Lender. (Compl. ¶8.)  The Note, the Mortgage, the Loan Agreement, and the Guaranty, along with other documents executed by the Borrower and/or Guarantor in favor of the Original Lender, are collectively referred to herein as the "Loan Documents" (Copies are attached to the Complaint as exhibits.) Lender is the successor in interest to the Original Lender on the Loan and is the current holder of the Loan Documents. (Compl. ¶ 9.)

---

indicated:
    "DE" = Docket entry number in this case.
    "Compl." = Complaint (DE 1)
    "Mot." = Plaintiff's Motion for Entry of Default Judgment (DE 8)
    "Cav. Decl." Exhibit A, Plaintiff's Motion for Entry of Default Judgment (DE 8)
    "Guaranty" = Compl. Ex. D (DE 1-1 at 113)
     "Loan Agreement" = Compl. Ex. B (DE 1-1 at 25)

Relevant Provisions of the Loan Documents

Section 3(a)(i) of the Guaranty states that the "Guarantor absolutely unconditionally, and irrevocably guarantees to Lender," among other things, "[t]he full and prompt payment when due, whether at the Maturity Date or earlier, by reason of acceleration or otherwise, of all amounts for which Borrower is personally liable under Article III (Personal Liability) of the Loan Agreement." (Compl. ¶ 10.)

Article III, Section 3.05 of the Loan Agreement provides that the "Borrower will become personally liable to Lender for the repayment of all Indebtedness" if, among other things, the (1) "Borrower fails to comply with Section 6.13"; or (2) "[a] Transfer that is an Event of Default under Section 7.02 occurs," subject to certain exceptions. (Compl. ¶ 11.)

"Indebtedness" is defined as the principal and interest due on the Loan, together with "all other amounts due at any time under the Note, this Loan Agreement or any other Loan Document, including prepayment charges, late charges, default interest, and advances to protect the security of the [Mortgage]." (Compl. ¶ 12; Loan Agreement at 51.)

Section 6.13 (c)(ii) of the Loan Agreement states that the Borrower "will not engage in any business or activity other than the ownership, operation and maintenance of the Mortgaged Property and activities incidental to such ownership, operation, and maintenance." (Compl. ¶ 13.)

Section 7.02 of the same agreement provides that "[a] Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property, including the grant, creation or existence of any Lien on the Mortgaged Property," shall constitute an Event of Default. (Compl. ¶ 14.)

Under the Guaranty, the "Guarantor's obligations under [the Guaranty] constitute an unconditional guaranty of payment and performance and not merely a guaranty of collection." (Compl. ¶ 15; Guaranty § 6.) Further, the "Guarantor absolutely, unconditionally, and irrevocably guarantees to Lender … [a]ll costs and expenses, including

3

reasonable Attorneys' Fees and Costs, incurred by Lender in enforcing its rights under [the Guarantee]." (Compl. ¶ 16; Guaranty § 3(a)(iv).)

Borrower's Personal Liability to Lender

After the Borrower executed the Loan Documents and obtained the Loan, on July 9, 2019, Borrower caused the Mortgaged Property to be encumbered by a mortgage to BBF Partners LLC ("BBF Partners") (the "BBF Mortgage"). (Compl. ¶ 17.) The purpose of the BBF Mortgage was to secure a loan in the principal amount of $2,750,000.00 in relation to two other entities, 395-397 Clinton LLC and 1129-1135 South Orange Ave LLC. (Compl. ¶ 17). The BBF Mortgage was recorded with the Essex County Register of Deeds and Mortgages on December 20, 2019. (Compl. ¶ 17.)

The Complaint alleges that the BBF Mortgage violates Section 6.13(c)(ii) and 7.02(a) of the Loan Agreement because it is "both a Lien on the Mortgaged Property and unrelated to the ownership, operation, and maintenance of the Mortgaged Property." (Compl. ¶ 18.) Accordingly, the Lender asserts that the Borrower is personally liable to the Lender for the repayment of all the Indebtedness pursuant to Section 3.05 of the Loan Agreement, and the Guarantor, pursuant to Section 3(a)(i) of the Guarantee, "absolutely, unconditionally, and irrevocably guarantees such repayment." (Compl. ¶ 19.)

Guarantor's Breach of the Guaranty

On June 28, 2021, Lender's counsel sent the Guarantor a letter demanding performance of his obligations under the Guaranty and requiring him to pay the Indebtedness in full to Lender within seven days (the "Demand Letter"). (Compl. ¶ 20.) According to Lender, however, the Guarantor has "failed and/or refused to perform his obligations under the Guaranty and has not paid to Lender any portion of the Indebtedness." (Compl. ¶ 21).

### b. Procedural History

On July 7, 2021, Lender filed the Complaint against Guarantor for Breach of Contract (**Count 1**). (Compl. ¶¶23-27.) The Complaint alleged that the Guarantor breached his obligations under the Guaranty by refusing to pay

the full amount of the Indebtedness under the Loan Agreement, as well as the attorneys' fees and costs incurred by the Lender in attempting to enforce the Guaranty. (Compl. ¶ 26.)

Because Guarantor failed to answer the Complaint or otherwise respond to the matter, the Clerk entered default on August 25, 2021.

Lender now moves for default judgment and seeks damages in the amount of $2,257,641.78, plus additional interest of $492.73 per diem, for each day from May 21, 2021, to entry of judgment. (Mot. ¶ 10.)[2]

## II.   Discussion

### a.  Legal Standard

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F.

---

[2]   In a separate action, the Court has appointed a receiver and entered default judgment against the Borrower in the amount of $2,350,979.29. *See Wilmington Trust, etc. v. Bergen Lofts LLC,* Civ. No. 11674 (Docket items 13, 14, 15, 19).

Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

### b. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Here, the Complaint was filed on July 7, 2021. (DE 1.) Despite diligent efforts and inquiry, Lender was unable to personally serve Guarantor, or any person authorized to receive service on behalf of Guarantor. (DE 6.) Lender did, however, successfully serve the Summons and Complaint on July 23, 2021, via first-class mail, as permitted by N.J. Ct. R 4:4-4(b)(1). (DE 6.) Guarantor failed to answer or otherwise respond to the Complaint within the deadline and the Clerk's entry of default was duly noted on the docket on August 25, 2021. Therefore, the prerequisites for default have been satisfied.

### c. Three-Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

#### i. Factor one: Existence of a meritorious defense

As always, evaluation of the first factor is made difficult by the Guarantor's failure to answer or to oppose the motion for default judgment.

Nevertheless, my independent review of the record does not suggest that the Lender's claims are legally flawed.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000. (Compl. ¶¶ 1-3.)

Lender initiated this breach of contract action based on Guarantor's failure to fulfil its obligations under the Guaranty. (Compl. ¶¶23-27.) The Complaint alleges that the Guarantor violated the Guaranty by failing and refusing, despite the Lender's Demand Letter, to perform his obligations under the Guaranty and pay the Lender any portion of the Indebtedness as defined in Loan Agreement. (Compl. ¶ 21.)

I am satisfied that the Lender has set forth a legally sufficient claim of breach of contract against Guarantor. To establish a breach of contract under New Jersey law, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (internal citation omitted).

The Complaint alleges specific facts showing that the Guarantor and the Original Lender entered into Loan Documents, including the Guaranty. The Lender is the successor in interest to the Original Lender. (Compl. ¶¶ 8, 9). Specifically, the Complaint plausibly alleges that the Borrowers breached Sections 6.13(c)(ii) and 7.02(a) of the Loan Agreement by causing the Mortgaged Property to be encumbered by a mortgage to BBF Partners. (Compl. ¶ 17.) The Lender duly alleges that the BBF Mortgage is both (1) a Lien on the Mortgaged Property and (2) unrelated to the ownership, operation, and maintenance of the Mortgaged Property, in violation of Sections 6.13(c)(ii) and 7.02 of the Loan Agreement. (Compl. ¶ 18.)

Finally, the Complaint alleges that because the Borrower is personally liable to the Lender for the repayment of all the Indebtedness pursuant to Section 3.05 of the Loan Agreement, under the Guaranty, the "guarantor absolutely, unconditionally, and irrevocably guarantees such repayment."

(Compl. ¶ 19.) Based on these facts, I am satisfied that Lender has alleged a valid contract between the parties.

The second element of a contract claim, a breach of a contractual obligation, has also been adequately pled. The Lender sent the Guarantor the Demand Letter requesting performance of the Guaranty. Lender alleges that the Guarantor has not performed his obligations under the Guaranty and has not paid the Lender any portion of the Indebtedness. (Compl. ¶¶ 20-21.)

As for the third element, damages, Lender alleges that it has been financially damaged because of Guarantor's breach (Compl. ¶22), and that it is entitled to the amount of $2,257,641.78, in addition to per diem interest of $492.71. (Mot. ¶¶ 4,10; Cavagnaro Decl. ¶¶ 8-9.)

In light of the above, I find the first factor supports default.

### ii. Factors two and three: Prejudice to Lender and Guarantor's culpability

The second and third factors also weigh in favor of default. Guarantor failed to appear, defend, or otherwise respond to the Complaint. It is clear that Lender has been prejudiced by this dereliction because it has been "prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiff will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm caused by Defendant.").

Additionally, absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that [Guarantor's] failure to file an answer was not willfully negligent." *See Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009)) (finding that when

there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment.

### d. Remedies

Lender seeks $2,257,641.78, plus additional interest of $492.73 per diem from May 21, 2021, to the date of this Order. That amount is itemized as follows:

| | |
|---|---|
| Principal Balance | $2,055,399.94 |
| Note Interest (11/1/20-5/21/21) | $56,041.62 |
| Default Interest (12/1/20-5/21/21) | $39,280.98 |
| Late Fees | $3,761.73 |
| Property Protection Advances | $3,894.00 |
| Tax Advance | $3,661.95 |
| Legal Fees | $11,494.23 |
| Special Servicing Fees | $3,790.79 |
| Prepayment Premium | $81,570.45 |
| <Less Credit for Suspense Funds> | <$1,253.92> |
| TOTAL AMOUNT DUE as of 5/21/2021 | $2,257,641.78 |

(Cavagnaro Decl. ¶¶ 8-9.)

As alleged in the Complaint, the Loan Agreements provide for (1) fixed monthly principal and interest payments in the amount of $10,638.59 (Note §§ 1, 3 (a)-(b), Exhibit A to the Compl.); (2) a late charge of 5% of any overdue payment (Note § 5 (a), Exhibit A to the Compl.); (3) a default annual interest rate of 4% if Lender has not received the full amount of any monthly payment for 30 days or more, or any other Event of Default has occurred (Note § 5 (b), Exhibit A to the Compl.); (4) attorneys' fees and costs (Loan Agreement § 8.03 (a), Exhibit B to the Compl.); and (5) prepayment charges. (Note § 4 (b), Exhibit

A to the Compl.; *see also* Mortgage at 3, Exhibit C to the Compl.) The Mortgage also provides for the payment of taxes and fees upon Borrower's default. (Mortgage at 20, Exhibit C to the Compl.) Therefore, I find Lender is entitled to the remedies sought.

### III.   Conclusion

For the reasons set forth above, I will grant Lender's motion (DE 8). Lender is to submit a form of final judgment.

An appropriate order follows.

Dated: October 12, 2021.

/s/ Kevin McNulty

**Kevin McNulty**
**United States District Judge**